**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| LAUREN COMBS, | ) |
| on behalf of Plaintiff and a class, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MAKES CENTS, INC., | ) |
| doing business as MaxLend; | ) |
| UETSA TSAKITS, INC.; | ) |
| DAVID JOHNSON; | ) |
| KIRK MICHAEL CHEWNING; and | ) |
| CANE BAY PARTNERS VI, LLLP; | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT – CLASS ACTION

1.     Plaintiff Lauren Combs brings this action to secure redress from predatory and unlawful loans (such as Exhibit A) made by Defendants (a) Makes Cents, Inc., doing business as MaxLend ("MaxLend"); (b) Uetsa Tsakits, Inc. ("UTI"); (c) David Johnson; (d) Kirk Michael Chewning; and (e) Cane Bay Partners VI, LLLP.

2.     Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 et seq., and the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under RICO (Counts IV-VI).

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction under 18 U.S.C. §1964 (RICO), 28 U.S.C. §1331 (general federal question), and 28 U.S.C. §1367 (supplemental jurisdiction). Depending on the number of class members and the amount of loans made to them, the Court may also have jurisdiction under 28 U.S.C. §1332(d).

1

4.      This Court has personal jurisdiction over each Defendant because they knowingly participated in the making of unlawful loans to Illinois residents.

5.      Venue is proper because the loans were made to a resident of Winnebago County.

## PARTIES

### Plaintiff

6.      Plaintiff Lauren Combs is a resident of Winnebago County, Illinois.

### Defendants

7.      Defendant Makes Cents, Inc., claims on loan documents (Exhibit A) to be the party doing business through the website www.MaxLend.com.  It purports to be a corporation organized as "an economic development arm and instrumentality of, and wholly-owned and controlled by the Mandan, Hidatsa, and Ankara Nation, a federally-recognized sovereign American Indian Tribe" located in North Dakota.  It claims to operate from the address 217 3rd Avenue NE, Parshall, ND 58770. It also uses P. O. Box 639, Parshall, ND 58770.

8.      Defendant UTI claims on the website www.MaxLend.com to be the party doing business through the website.  (Exhibit B).  It purports to be a corporation owned and operated by the Mandan, Hidatsa, and Ankara Nation.  It uses P. O. Box 760, Parshall, ND 58770.

9.      In fact, the lending business conducted through www.MaxLend.com is beneficially owned and conducted by Defendants David Johnson ("Johnson") and Kirk Michael Chewning ("Chewning") through a web of interconnected companies, culminating with Defendant Cane Bay Partners VI, LLLP.

10.      Defendant David Johnson is an individual who resides in the U. S. Virgin Islands.

11.      Defendant Kirk Michael Chewning is an individual who may be found at 574 Vinings Springs Dr. SE 12, Mableton, GA 30126-5995, or PO Box 24313, Christiansted, VI 00824-0313.

12.      Defendant Cane Bay Partners VI, LLLP, is a limited liability limited partnership in the U. S. Virgin Islands.  Its address is 17 Church Street, Ste. 305, St. Croix, U. S. Virgin Islands

00820.  Its sole business is the management and operation of online high-interest lenders.

13.    Defendants Chewning and Johnson are partners of Cane Bay Partners VI, LLLP.

## FACTS

### History of MaxLend

14.     The domain maxlend.com was first registered in 2005, but the website contained no actual content until mid-2013.

15.    Domain name registration records from 2010 reveal that the registrant's address was in the U.S. Virgin Islands (Exhibit C).

16.     MaxLend's website archived on September 21, 2013 makes no reference to any tribal ownership, and instead says "P.O. Box 1793, Belize City, Belize C.A." (Exhibit D)

17.    In early 2014, MaxLend "moved" from supposedly being an offshore lender in Central America to being a purported tribal lender in rural North Dakota.

18.    In fact, the lending business was not operated from either Belize or North Dakota.

### Operation of Lending Business

19.    Based on its purported tribal ownership, MaxLend claims it is a "tribal lending entity" and therefore is entitled to invoke tribal sovereign immunity.

20.    In fact, the Tribe has no significant involvement in the operation of the lending business.

21.    Furthermore,  the principal economic benefit of the activities of MaxLend is received by non-Native American persons.

22.    MaxLend does business in Illinois over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

23.    Defendants Cane Bay Partners VI, LLLP, Johnson and Chewning actually run the lending business conducted via www.MaxLend.com, directly or through other entities they own. They secure funding, design websites, market the business, underwrite and approve loans, and performing all other necessary functions.

24.     The Tribe contracts with Cane Bay to provide management consulting, service provider analysis, and risk management services to MaxLend.

25.     The Chief Portfolio Officer of MaxLend, Darin Thomason, is a non-member of the Tribe who lives in Texas.

## FACTS RELATING TO PLAINTIFF

26.     On or about April 10, 2021, MaxLend made a loan to Plaintiff via Internet in the amount of $400 at a disclosed annual percentage rate of 699.77% (Exhibit A).

27.     Exhibit A is a standard form loan agreement used by "MaxLend" on a regular basis.

28.     Defendants regularly make loans to individuals in Illinois at such rates.

29.     The loan was obtained for personal, family or household purposes and not for business purposes.

30.     At no time have Defendants had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling them to make loans to Illinois residents at more than 9% interest.

31.     Defendants nevertheless advertise and make loans to Illinois residents at rates greatly exceeding 9%.

32.     Defendants sought out Illinois residents for such loans.

33.     The "MaxLend" website lists states in which Defendants will not make loans. Illinois is not one of these states.  (Exhibit B)

34.     Plaintiff has made payments on the loan.

35.     Defendants claim amounts are still owed on the loan.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

36.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%.   815 ILCS 123/15-1-1 et seq.  "Any loan made in violation of this Act is null and

4

void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

37.     Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

38.     In addition, it is unlawful for anyone who does not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest.   815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

39.     Any loans to Illinois residents at more than 9% that  are made by unlicensed persons are void and unenforceable.  205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.");  815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

40.     Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

41.     Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony.  720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 et seq).  It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if

"the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

42. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

43. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), *In the Matter of Money Mutual, LLC*, No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/ MoneyMutualCDOrder12CC408.pdf); *In the Matter of Hammock Credit Services*, No. 12 CC 581 (https://www.idfpr.com/dfi/ccd/Discipline/HammockCreditCDOrder12CC581.pdf); *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133 (https://www.idfpr.com/dfi/ CCD/Discipline/17CC133%20-%20Make%20Cents%20dba%20Maxlend%20Cease%20and%20De sist%20Order%20Bob%208%2016%202017.pdf)

**RENT-A-TRIBE SCHEMES**

44. In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

45. In such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

46. The illegal payday loans are then made in the name of a Native American tribal

business entity – whether Make Cents or UTI – which purports to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

47.     In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

48.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

49.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

50.     These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

51.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

52.     Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

53.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.,* No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote,* 961 F.3d 105 (2d Cir. 2020).

## COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT

54.     Plaintiff incorporates paragraphs 1-53.

55.     This claim is against all Defendants.

56.     There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiffs must repay the loans made to them.

57.     Declaratory relief will resolve such controversy.

58.     An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

59.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(2).

60.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "MaxLend" at more than 9% interest (c) or after March 23, 2021, (d) which loan has not been paid in full.

8

61.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

62.     The class is so numerous that joinder of all members is not practicable.   On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

63.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

64.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

65.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

66.     Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

67.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants,  and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.      Injunctive relief;

        ii.     Declaratory relief;

        iii.    Restitution of all amounts collected on the loans from members of the class;

        iv.    Costs of suit; and

        v.     Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

68.     Plaintiff incorporates paragraphs 1-53.

69.     This claim is against all Defendants.

70.     Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

71.     Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

72.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

73.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "MaxLend" at more than 9% interest (c) on or after March 23, 2021.

74.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

75.     The class is so numerous that joinder of all members is not practicable.  On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

76.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

77.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

78.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

79.     A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.     Individual actions are not economically feasible.

    b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.     Damages as provided in 815 ILCS 205/6.

    ii.    Attorney's fees, litigation expenses and costs of suit; and

    iii.   Such other and further relief as the Court deems proper.

### COUNT III – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

80.     Plaintiff incorporates paragraphs 1-53.

81.     This claim is against all Defendants.

82.     Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan  Prevention Act.

83.     Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.

### CLASS ALLEGATIONS

84.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

85.     The class consists of (a) all individuals with Illinois addresses (b) to  whom a loan was made in the name of "MaxLend" at more than 9% interest (c) or or after March 23, 2021.

86.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

87.     The class is so numerous that joinder of all members is not practicable.  On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

11

88. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

89. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

90. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

91. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Compensatory damages;

    ii. Punitive damages;

    iii. Attorney's fees, litigation expenses and costs of suit; and

    iv. Such other and further relief as the Court deems proper.

## COUNT IV – RICO

92. Plaintiff incorporates paragraphs 1-53.

93. This claim is against Johnson and Chewning and Cane Bay Partners VI, LLLP, who are the RICO "persons."

94. All loans made in the name of "MaxLend" to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the loan was made or or after March 23, 2021, and (d) the usurious rate is at least twice the enforceable rate (9%).

12

95.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

96.     MaxLend – whether operated by Makes Cents, UTI or both – is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

97.     Defendant Johnson and Chewning is associated with this enterprise.  Johnson and Chewning operate Cane Bay Partners VI, LLLP, through which they direct and supervise the making of loans to Illinois residents.

98.     Defendant Cane Bay Partners VI, LLLP, is also associated with this enterprise.  It directs and supervises the making of loans to Illinois residents.

99.     Defendants Johnson and Chewning and Cane Bay Partners VI, LLLP, conducted or participated in the conduct of the affairs of "MaxLend" through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

100.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

101.     Plaintiff brings this claim on behalf of a class.

102.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "MaxLend" at more than 9% interest (c) which loan was made on or after March 23, 2021.

103.     The class is so numerous that joinder of all members is not practicable.   On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

104.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

         a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

         b.     Whether "MaxLend" is an "enterprise."

13

      c.      Whether Defendants are associated with "MaxLend".

      d.      Whether Defendants conducted or participated in the affairs of "MaxLend" through a pattern of making and collecting unlawful loans.

105. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

106. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

107. A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.      Individual actions are not economically feasible.

      b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.      Treble damages;

      ii.      Attorney's fees, litigation expenses and costs of suit; and

      iii.      Such other or further relief as the Court deems proper.

## COUNT V – RICO

108. Plaintiff incorporates paragraphs 1-53.

109. This claim is against Johnson and Chewning, who are the RICO "persons."

110. All loans made in the name of "MaxLend" to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the loan was made on or after March 23, 2021, and (d) the usurious rate is at least twice the enforceable rate (9%).

111. The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

112. MaxLend and Cane Bay Partners VI, LLLP, constitute an association in fact enterprise, existing for the purpose of making high-interest loans.

113. The association in fact enterprise affects interstate commerce, in that it has physical locations outside of Illinois and makes loans to Illinois residents via the Internet.

114. Defendants Johnson and Chewning are associated with the enterprise, in that he directs and controls its lending activities.

115. Defendant Johnson and Chewning conducted or participated in the conduct of the affairs of the association in fact enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

116. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

117. Plaintiff brings this claim on behalf of a class.

118. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "MaxLend" at more than 9% interest (c) which loan was made on or after March 23, 2021.

119. The class is so numerous that joinder of all members is not practicable.   On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

120. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

    a.    Whether the loans at issue are "unlawful debts" as defined in RICO.

    b.    Whether  "MaxLend" and Cane Bay Partners VI, LLLP, constitute an association in fact "enterprise."

    c.    Whether Defendants are associated with the enterprise.

    d.    Whether Defendants conducted or participated in the affairs of the enterprise  through a pattern of making and collecting unlawful loans.

121. Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained

counsel experienced in class actions and consumer credit litigation.

122.    Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

123.    A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.    Individual actions are not economically feasible.

      b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.    Treble damages;

      ii.    Attorney's fees, litigation expenses and costs of suit; and

      iii.    Such other or further relief as the Court deems proper.

## COUNT VI – RICO

124.    Plaintiff incorporates paragraphs 1-53.

125.    This claim is against Johnson and Chewning, who are the RICO "persons."

126.    All loans made in the name of "MaxLend" to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

127.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

128.    Cane Bay Partners VI, LLLP, is an enterprise, in that it is duly organized partnership entity.

129.    The enterprise affects interstate commerce, in that it has physical locations outside of Illinois and directs the making of loans to Illinois residents via the Internet.

130.    Defendants Johnson and Chewning are  associated with the enterprise, in that they are its managers and direct and control its lending activities.

131.    Defendants Johnson and Chewning conducted or participated in the conduct of the

affairs of the enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

132.    Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

133.    Plaintiff brings this claim on behalf of a class.

134.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "MaxLend" at more than 9% interest (c) which loan was made on or after March 23, 2021.

135.    The class is so numerous that joinder of all members is not practicable.   On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

136.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

      a.    Whether the loans at issue are "unlawful debts" as defined in RICO.

      b.    Whether  Cane Bay Partners VI, LLLP, is an "enterprise."

      c.    Whether Defendants are associated with the enterprise.

      d.    Whether Defendants conducted or participated in the affairs of the enterprise  through a pattern of making and collecting unlawful loans.

137.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

138.    Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

139.    A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.    Individual actions are not economically feasible.

      b.    Members of the class are likely to be unaware of their rights.

17

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

             i.        Treble damages;

            ii.        Attorney's fees, litigation expenses and costs of suit; and

           iii.       Such other or further relief as the Court deems proper.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6297473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

18

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any  recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

## <u>LIST OF EXHIBITS</u>

A       Ms. Combs' loan agreement

B       Material from www.MaxLend.com

C       Domain registration for brightlending.com, October 16, 2017

D       Domain registration for brightlending.com, Jan. 18, 2018